UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   Criminal No.   20cr10202 |
| | ) |
| | )   Violations: |
| | ) |
| JOHN F. CASEY, | )   Counts One - Eight: Wire Fraud |
| | )   (18 U.S.C. § 1343) |
| Defendant | ) |
| | )   Count Nine: Aggravated Identity Theft |
| | )   (18 U.S.C. § 1028A(a)(1)) |
| | ) |
| | )   Counts Ten - Twelve:  Money Laundering |
| | )   (18 U.S.C. § 1957) |
| | ) |
| | )   Counts Thirteen - Fifteen: Filing False Tax Returns |
| | )   (26 U.S.C. § 7206(1)) |
| | ) |
| | )   Forfeiture Allegations: |
| | )   (18 U.S.C. §§ 981(a)(1)(C), 982(a)(1) and |
| | )   28 U.S.C. § 2461(c)) |

INDICTMENT

At times relevant to this indictment:

General Allegations

1.      The defendant, JOHN F. CASEY, was a resident of Ipswich, Massachusetts.

2.      Casey Summit, LLC was a Massachusetts domestic limited liability company with a principle place of business at 435 Newbury Street, Danvers, Massachusetts.  Casey Summit, LLC was organized in Massachusetts in or around October 2012, and CASEY has been the manager and sole signatory for the company since its organization.

1

3.     Boston Grand Prix, LLC (BGP) was a Massachusetts domestic limited liability company with a principle place of business at 425 Summer Street, Boston, Massachusetts. In or around January 2015, CASEY became the Chief Financial Officer (CFO) of BGP.

4.     Individual 1 was an owner of a hockey rink construction and repair business (Business 1) located in Stoneham and Andover, Massachusetts.

5.     The Internal Revenue Service (IRS) was an agency of the United States Department of the Treasury responsible for administering and enforcing the tax laws of the United States.

6.     Equipment leasing and equipment financing are financial programs available to businesses requiring significant equipment investments. The programs operate generally as follows:

    a.  With equipment leasing, a lender buys a piece of equipment directly from a vendor, and then rents the equipment to the business for a monthly payment. At the end of the lease, the business can choose to purchase the equipment, renew the lease, or return the equipment.

    b.  With equipment financing, the lender loans funds to the business for the purchase of the equipment. The lender pays the vendor directly, but the business owns the equipment, which generally remains encumbered until the business has paid the loan in full.

7.     Loans and cash advances are financial programs available to businesses in need of working capital. The programs operate generally as follows:

    a.  With a loan, a financing company provides funding in the form of a business loan or a working capital loan, which the business repays in predetermined increments over a set time period. Generally, business loans and working capital loans are secured by assets of the business, and the financing company charges interest on the outstanding balance of the loan.

    b.  A cash advance is a discounted lump-sum purchase of future accounts receivable or future credit card receivables. The financing company provides money to the business in exchange for a certain share of the business's future accounts receivable or future credit card receivables. The business remits the

2

purchased receivables to the financing company in predetermined increments over a set time period.

8.     In 2015, BGP made payments to or for the benefit of CASEY totaling approximately $308,292.

9.     In 2016, BGP made payments to or for the benefit of CASEY totaling approximately $601,073.

### The Scheme to Defraud

10.     In or around 2008 or 2009, Business 1 built a training-sized ice rink at 216 Newbury Street, Peabody, Massachusetts (the Peabody Rink).

11.     In or around October 2013, CASEY, through Casey Summit, LLC, purchased the Peabody Rink. CASEY operated the Peabody Rink under the name (*i.e.,* d/b/a) Overtime Ice Rink.

12.     After he purchased the Peabody Rink, CASEY hired Business 1 to perform repairs at the Peabody Rink.

13.     On or about June 1, 2016, CASEY sold the Peabody Rink, and equipment associated with the Peabody Rink, to Business 2.

14.     In or around October 2014, CASEY told Individual 1 that he owned a leasing company and was familiar with the equipment financing industry, and that he (CASEY) wanted to refinance his ice rink equipment to pull out the money that he had invested in the Peabody Rink.

15.     Individual 1 agreed to allow CASEY to use Business 1 as an equipment supply company for lenders, and to receive money from lenders that Individual 1 would then pay to CASEY, after Individual 1 took a fee that was determined on a transaction-by-transaction basis by CASEY.

3

16.    Between in or around October 2014 and in or around October 2016, CASEY made material misrepresentations (or caused such misrepresentations) to at least eleven (11) lenders in order to induce the lenders to provide financing for ice rink equipment, in the form of loans and leases, to Casey Summit, LLC and Casey Summit, LLC d/b/a Overtime Ice Rink, in amounts and on terms the lenders otherwise would not have made.

17.    In addition, in or around August 2016, CASEY made material misrepresentations (or caused such misrepresentations) to at least four (4) financing companies to induce the companies to provide business funding, in the form of loans and cash advances, to Casey Summit, LLC and Casey Summit, LLC d/b/a Overtime Ice Rink, in amounts and on terms the financing companies otherwise would not have made.

18.    The equipment financing that Casey obtained as part of the scheme included the loans listed below.  The funding for each purported equipment purchase was issued on or about the dates set forth:

     a.  $69,950 from Lender 1 for NER Ice Resurfacer 9000 Serial #01014 (10/27/2014);

     b.  $75,259.38 from Lender 2 for NER Ice Resurfacer 9000 Serial #01017 (11/6/2014);

     c.  $49,950 from Lender 3 for Zamboni model 500 Ice Resurfacer Serial #Z116-182 (1/28/2015);

     d.  $46,950 from Lender 4 for Zamboni model 500 Ice Resurfacer Serial #Z119 (3/4/2015);

     e.  $32,950 from Lender 4[1] for Portable Thermal Plus Ice Rink Defogger Model IRD-075-7 and Air Flow Diffuser (4/20/2015);

     f.  $79,500 from Lender 5 for Zamboni Model 500 (4/29/2015);

     g.  $79,950 from Lender 6 for Zamboni Model 500 Serial Number 1061 (5/28/2015);

     h.  $79,950 from Lender 7 for Zamboni Model 500 (7/2/2015);

---

[1] CASEY obtained multiple loans from some lenders, including Lenders 4 and 6.

i.  $44,950 from Lender 8 for Portable Ice Dehumidification System Serial # 01017 (7/25/2015);

j.  $24,950 from Lender 9 for Thomsen Ice Edger Serial #3363, Serial #01017 (7/30/2015);

k.  $29,950 from Lender 10 for Thomsen Ice Edger Serial #1068 (8/20/2015);

l.  $23,450 from Lender 11 for Portable Dehumidification System Serial #2091 (9/21/2015);

m.  $31,439.38 from Lender 9 for Thomsen Ice Edger Serial # 01084 (9/17/2016);

n.  $34,950 from Lender 11 for Thomsen Ice Edger Serial # 01019 (9/30/2016);

o.  $39,450 from Lender 10 for Totalaire Portable Dehumidification System Serial #2289 (10/18/2016).

19.    The business funding that Casey obtained as part of the scheme included the agreements listed below.  The funding for each agreement was issued on or about the dates set forth:

a.  $35,000 cash advance from Lender 12, pursuant to Future Receivables Sale Agreement (8/3/2016);

b.  $53,149 loan from Lender 13, pursuant to Business Loan Agreement (8/18/2016);

c.  $12,000 cash advance from Lender 14, pursuant to Future Receivables Sale Agreement (8/19/2016);

d.  $45,000 loan from Lender 15, pursuant to Business Loan and Security Agreement (8/31/2016).

20.    Because CASEY did not in fact have the financial ability to pay pursuant to the agreements described above, in many instances he defaulted on the payments.  Then, because the collateral securing many of the agreements or the future receivables purchased did not exist, had been sold, had been pledged to multiple financing companies, or was virtually worthless, CASEY's defaults resulted in losses to the financing companies.

$34,950 from Lender 11 for Thomsen Ice Edger Serial # 01019

21.    As one example, in or around September 2016, CASEY caused the submission of a financing application to Lender 11 for the purported purchase of an ice edger from Business 1

5

for approximately $35,000.  Business 1 had in fact brokered the sale of an ice edger to CASEY, but the sale was in or around April 2015, and CASEY paid only $3,500 for the ice edger.

22.     In connection with the financing application, CASEY caused to be submitted to Lender 11 materially false information, as well as fraudulent documents.  The false representations and documents concerned the business and revenues of Casey Summit, LLC.  In addition, CASEY prepared and submitted false tax returns and other tax documents, a false Business 1 invoice, and other false documents in support of the financing application.

23.     On or about September 26, 2016, CASEY falsely confirmed for a Lender 11 representative in a recorded telephone call that the ice edger had been delivered and installed at the Peabody Rink on September 23, 2016.

24.     Based upon the false and fraudulent information and documents that CASEY submitted in support of the financing application for the purported purchase of the ice edger, Lender 11 entered into an equipment finance agreement with Casey Summit, LLC.  On or around September 30, 2016, Lender 11 paid $34,950 to Business 1, purportedly for the purchase of the ice edger.  Unbeknownst to Lender 11, Individual 1 then transferred $34,000 of the financing proceeds to CASEY.  Most of the funds advanced by Lender 11 were never repaid.

<u>$45,000 Business Loan from Lender 15</u>

25.     As another example, on or about August 28, 2016, CASEY caused the submission of a financing application to Lender 15 for a small business loan to Casey Summit, LLC.  CASEY falsely represented to Lender 15 that Casey Summit, LLC was in the ice rink business, even though Casey Summit, LLC sold the Peabody Rink to Business 2 on or about June 1, 2016.

26.     In connection with the financing application, CASEY caused to be submitted to Lender 15 materially false information, as well as fraudulent documents. The false representations and documents concerned the business and revenues of Casey Summit, LLC d/b/a Overtime Ice Rink. In addition, CASEY prepared and submitted false tax returns and other tax documents, a false Deed of Sale containing the forged signature of Individual 2, and other false documents in support of the financing application.

27.     Based upon the false and fraudulent information and documents submitted in support of the financing application, Lender 15 entered into a business loan and security agreement with Casey Summit LLC d/b/a Overtime Ice Rink. On or about September 1, 2016, Lender 15 transferred $44,100 into a Santander account held in the name of Casey Summit, LLC. Most of the funds advanced by Lender 15 were never repaid.

## The Federal Tax Requirements

28.     The tax laws of the United States require every citizen and resident of the United States who receives income in excess of the minimum filing amount established by law for a particular tax year to make and file an income tax return for that tax year using IRS Form 1040, IRS Form 1040A or IRS Form 1040EZ. Each of those forms requires the tax filer to report their gross income for the tax year.

29.     Under the tax laws, gross income means all income from whatever source derived, including but not limited to compensation for services, fees and gross income derived from a business.

30.     Under the tax laws, when money is acquired via a loan and there is no good faith intent on the part of the recipient to repay the funds advanced, such funds are income and are taxable as such.

### The False Tax Returns

31.     The funds CASEY fraudulently obtained from the financing companies were income to CASEY in the years in which he took the money.

32.     The funds CASEY received from BGP and the funds paid on CASEY's behalf by BGP were income to CASEY in the years in which he received the money.

33.     CASEY caused joint federal Form 1040 tax returns to be prepared for tax years 2014, 2015 and 2016 on behalf of himself and his spouse.

34.     CASEY and his spouse signed their 2014, 2015 and 2016 federal tax return Forms 1040 declaring under penalty of perjury that the information submitted in each of the returns was true, correct and complete.

35.     CASEY caused his federal tax returns for 2014, 2015 and 2016 to be filed with the IRS.

36.     For tax years 2014, 2015 and 2016, CASEY deliberately failed to report to the IRS the income he fraudulently obtained from financing companies.

37.     For tax years 2015 and 2016, CASEY deliberately failed to report to the IRS the income he received from BGP.

8

COUNTS ONE - EIGHT
Wire Fraud
(18 U.S.C. § 1343)

The Grand Jury charges:

38.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 37 of this Indictment.

39.     From in or about October 2014 through in or about January 2017, in the District of Massachusetts and elsewhere, the defendant,

JOHN F. CASEY,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| 1 | 7/28/2016 | Email from laser_jcasey@laserleasing.com to Lender 2 |
| 2 | 8/3/2016 | Wire transfer in the amount of $35,000 from Lender 12 to Casey Summit, LLC account at Citizens |
| 3 | 8/15/2016 | Contract with Lender 13 signed by jcasey8608@aol.com using Docusign |
| 4 | 8/17/2016 | Email from Adobe Sign to John Casey and Lender 14 |
| 5 | 9/1/2016 | Wire transfer in the amount of $44,100 from Lender 15 to Casey Summit, LLC account at Santander Bank |
| 6 | 9/17/2016 | Deposit of check from Lender 9 in the amount of $15,719.69 into Business 1 account at Methuen Cooperative Bank |
| 7 | 9/23/2016 | Email from jcasey1350@aol.com to Lender 10 |
| 8 | 12/13/2016 | Email from jcasey1350@aol.com to Lender 11 |

All in violation of Title 18, United State Code, Section 1343.

COUNT NINE
Aggravated Identity Theft
(18 U.S.C. § 1028A(a)(1))

The Grand Jury further charges:

40.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 37 of this Indictment.

41.     In or about August 2016, in the District of Massachusetts and elsewhere, the defendant,

JOHN F. CASEY,

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), that is, wire fraud in violation of 18 U.S.C. § 1343.

All in violation of Title 18, United States Code, Section 1028A(a)(1).

10

COUNTS TEN - TWELVE
Money Laundering
(18 U.S.C. § 1957)

The Grand Jury further charges:

42.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 37 of this Indictment.

43.     On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

JOHN F. CASEY,

knowingly engaged and attempted to engage in monetary transactions in criminally derived property of a value greater than $10,000, where such property was derived from specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343:

| Count | Approximate Date | Transaction |
|---|---|---|
| 10 | 9/19/2016 | Deposit of Business 1 Check No. 3338, in the amount of $29,000, drawn on Methuen Cooperative Bank account number xxxxx2387, into Santander Bank account number xxxxxx5767, held in the name of Casey Summit, LLC |
| 11 | 10/1/2016 | Deposit of Business 1 Check No. 3645, in the amount of $34,000, drawn on Methuen Cooperative Bank account number xxxxx2387, into Santander Bank account number xxxxxx5767, held in the name Casey Summit, LLC |
| 12 | 10/21/2016 | Wire transfer in the amount of $38,961 from Methuen Cooperative Bank account number xxxxx2387, into Santander Bank account number xxxxx5767. |

All in violation of Title 18, United States Code, Section 1957.

## COUNTS THIRTEEN - FIFTEEN
Filing a False Tax Return
(26 U.S.C. § 7206(1))

The Grand Jury further charges:

44.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 37 of this Indictment.

45.     On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

JOHN F. CASEY,

did willfully make and subscribe a U.S. Individual Tax return which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the Director, Internal Revenue Service, and which return the defendant did not believe to be true and correct as to every material matter in that the gross income CASEY received for the tax years set forth below substantially exceeded the amount CASEY reported to the IRS, as follows:

| Count | Filed On or About | Tax Year | False Items |
|-------|-------------------|----------|-------------|
| 13 | 10/29/2015 | 2014 | Line 22, Total Income: $60,661 |
| 14 | 6/24/2016 | 2015 | Line 22, Total Income: $69,068 |
| 15 | 9/25/2018 | 2016 | Line 22, Total Income: -$9,000 |

All in violation of Title 26, United States Code, Section 7206(1).

FRAUD FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

1.      Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1343, set forth in Counts One through Eight of this Indictment, the defendant,

JOHN F. CASEY,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

2.      If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the Court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

## MONEY LAUNDERING FORFEITURE ALLEGATION
### (18 U.S.C. § 982(a)(1))

1.    Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1957, set forth in Counts Ten through Twelve of this Indictment, the defendant,

JOHN F. CASEY,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offenses, and any property traceable to such property.

2.    If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant --

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third party;

    c.   has been placed beyond the jurisdiction of the Court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

_____
KRISTINA E. BARCLAY
ASSISTANT U.S. ATTORNEY

DISTRICT OF MASSACHUSETTS, ____September 23____, 2020

Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK

15