UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:20-cr-10202-ADB |
| | ) | |
| JOHN F. CASEY, | ) | Violations: |
| | ) | |
| Defendant | ) | Counts One – Twenty-Three: Wire Fraud |
| | ) | (18 U.S.C. § 1343) |
| | ) | |
| | ) | Counts Twenty-Four – Twenty-Six: Aggravated |
| | ) | Identity Theft |
| | ) | (18 U.S.C. § 1028A(a)(1)) |
| | ) | |
| | ) | Counts Twenty-Seven – Thirty:  Money Laundering |
| | ) | (18 U.S.C. § 1957) |
| | ) | |
| | ) | Counts Thirty-One – Thirty-Three: Filing False Tax |
| | ) | Returns |
| | ) | (26 U.S.C. § 7206(1)) |
| | ) | |
| | ) | Forfeiture Allegations: |
| | ) | (18 U.S.C. §§ 981(a)(1)(C), 982(a)(1) and |
| | ) | 28 U.S.C. § 2461(c)) |

**SUPERSEDING INFORMATION**

At times relevant to this Information:

General Allegations

1.      The defendant, JOHN F. CASEY, was a resident of Ipswich, Massachusetts.

2.      G.C. was CASEY's wife, C.J.C. and K.C. were CASEY's sons, M.C. was Casey's

sister, and C.C. was CASEY's mother.  Individuals 1, 2 and 3 were CASEY's associates.

3.      Aesthetic Laser Exchange, Inc. (Aesthetic Laser) was a Massachusetts domestic

profit corporation organized by CASEY on or around March 6, 2003.  CASEY and G.C. were

identified as officers and directors of Aesthetic Laser until in or around June 2014, when Aesthetic

1

Laser was involuntarily dissolved.  On or about June 24, 2020, CASEY caused a Statement of Change of Supplemental Information to be filed with the Secretary of the Commonwealth, Corporations Division (SOC), identifying his son C.J.C. as the President, Treasurer, Secretary and Director of Aesthetic Laser.  On or around August 18, 2020, CASEY caused a Statement of Change of Supplemental Information to be filed with the SOC, identifying his son K.C. as the President, Treasurer, Secretary and Director of Aesthetic Laser.

4.      Casey Summit, LLC (Casey Summit) was a Massachusetts domestic limited liability company organized in or around October 2012.  CASEY was the manager and sole signatory for the company from its organization until on or around June 20, 2020, when CASEY purportedly transferred ownership of the company to his son, C.J.C.

5.      KK Equipment Exchange, Inc. (KK Equipment) was a Massachusetts domestic profit corporation organized at CASEY's direction on or around October 2, 2013, when Individual 1 was identified as the President, Treasurer, Secretary and Director of KK Equipment.  At the request of Individual 1, KK Equipment was voluntarily dissolved on or around June 2, 2014.  On or around July 10, 2020, CASEY caused to be filed a Statement of Change of Supplemental Information with the SOC, identifying his son C.J.C. as the President, Treasurer, Secretary and Director of KK Equipment.

6.      Loap Leasing, LLC (Loap) was a Massachusetts domestic limited liability company organized by CASEY on or around May 28, 2017.  As of June 2018, CASEY had identified his son C.J.C., his mother C.C., and his sister M.C. as Managers of Loap.

7.      The first of two companies named Asset Liquidation Enterprises, LLC (ALE #1) was a Massachusetts domestic limited liability company organized by CASEY on or around June

30, 2018, with Individual 2 listed as the President, Treasurer, Secretary and Director.  On or around September 21, 2018, CASEY removed Individual 2's name from ALE #1 at her request, and identified his son K.C. as the President, Treasurer, Secretary and Director.  On or around April 19, 2019, CASEY caused the name of the company to be changed from Asset Liquidation Enterprises, Inc. to Practice Solutions Northeast, Inc. (PSN).  By in or around October 2019, CASEY had named his son K.C. as the President, Treasurer, Secretary and Director of ALE #1, now known as PSN.

8.      Mind Body Wellness USA, LLC (Mind Body) was a Massachusetts domestic limited liability company organized by CASEY on or around August 1, 2018, with his son C.J.C. listed as one of the Managers.

9.      The second of two companies named Asset Liquidation Enterprises, LLC (ALE #2) was a Massachusetts domestic limited liability company organized by CASEY on or around June 11, 2020, with his son C.J.C. listed as the President, Treasurer, Secretary and Director.

10.     Nuwave Lasers, LLC (Nuwave) was a Massachusetts domestic limited liability company organized by CASEY on or around June 12, 2020, with his sons C.J.C. and K.C. named as Managers.

11.     Now Potty, LLC (Now Potty) was a New Hampshire domestic limited liability company organized by CASEY on or around June 27, 2020.  CASEY identified Individual 3 and her minor son as Members of Now Potty, but never told Individual 3 that he was organizing the company or that she and her minor son were Members of Now Potty.

12.     Laser Leasing, Inc. (Laser Leasing) was a Massachusetts domestic profit corporation organized by CASEY on or about September 21, 2020, with his son C.J.C. identified as the President, Treasurer, Secretary and Director.

13.     The United States Small Business Administration (SBA) was an agency of the executive branch of the United States government.  The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.  As part of this effort, the SBA enabled and provided for loans, guaranteed by the government, through banks, credit unions, and other lenders.

14.     The Massachusetts Growth Capital Corporation (MGCC) was a component unit of the Commonwealth of Massachusetts formed in or around October 2010 to create and preserve jobs at small businesses and promote economic development throughout the Commonwealth.  As part of this effort, the MGCC awarded and disbursed grants comprised of federal and state funds.

15.     Boston Grand Prix, LLC (BGP) was a Massachusetts domestic limited liability company with a principal place of business at 425 Summer Street, Boston, Massachusetts.  In or around January 2015, CASEY became the Chief Financial Officer (CFO) of BGP.

16.     Individuals 4 and 5 were owners of a hockey rink construction and repair business (Business 1) located in Stoneham and Andover, Massachusetts.

17.     The Internal Revenue Service (IRS) was an agency of the United States Department of the Treasury responsible for administering and enforcing the tax laws of the United States.

### I.       **The Equipment Financing Scheme to Defraud**

18.     Equipment leasing and equipment financing are financial programs available to businesses requiring significant equipment investments.   The programs operate generally as follows:

> a.   With equipment leasing, a lender buys a piece of equipment directly from a vendor, and then rents the equipment to the business for a monthly payment. At the end of the lease, the business can choose to purchase the equipment, renew the lease, or return the equipment.
>
> b.   With equipment financing, the lender loans funds to the business for the purchase of the equipment.   The lender pays the vendor directly, but the business owns the equipment, which generally remains encumbered until the business has paid the loan in full.

19.     Loans and cash advances are financial programs available to businesses in need of working capital.   The programs operate generally as follows:

> a.   With a loan, a financing company provides funding in the form of a business loan or a working capital loan, which the business repays in predetermined increments over a set time period.   Generally, business loans and working capital loans are secured by assets of the business, and the financing company charges interest on the outstanding balance of the loan.
>
> b.   A cash advance is a discounted lump-sum purchase of future accounts receivable or future credit card receivables.   The financing company provides money to the business in exchange for a certain share of the business's future accounts receivable or future credit card receivables.   The business remits the purchased receivables to the financing company in predetermined increments over a set time period.

20.     In or around 2008 or 2009, Business 1 built a training-sized ice rink at 216 Newbury Street, Peabody, Massachusetts (the Peabody Rink).

21.     In or around October 2013, CASEY, through Casey Summit, purchased the Peabody Rink.  CASEY operated the Peabody Rink under the name (*i.e.,* d/b/a) Overtime Ice Rink.

22.    After he purchased the Peabody Rink, CASEY hired Business 1 to perform repairs at the Peabody Rink.

23.    On or about June 1, 2016, CASEY sold the Peabody Rink, and equipment associated with the Peabody Rink, to Business 2.

24.    In or around October 2014, CASEY told Individual 4 that he owned a leasing company and was familiar with the equipment financing industry, and that he (CASEY) wanted to refinance his ice rink equipment to pull out the money that he had invested in the Peabody Rink.

25.    Individual 4 agreed to allow CASEY to use Business 1 as an equipment supply company for lenders, and to receive money from lenders that Individual 4 would then pay to CASEY, after Individual 4 took a fee that was determined on a transaction-by-transaction basis by CASEY.

26.    Between in or around October 2014 and in or around October 2016, CASEY made material misrepresentations (or caused such misrepresentations) to at least eleven (11) lenders in order to induce the lenders to provide financing for ice rink equipment, in the form of loans and leases, to Casey Summit and Casey Summit, LLC d/b/a Overtime Ice Rink, in amounts and on terms the lenders otherwise would not have made.

27.    In addition, in or around August 2016, CASEY made material misrepresentations (or caused such misrepresentations) to at least four (4) financing companies to induce the companies to provide business funding, in the form of loans and cash advances, to Casey Summit and Casey Summit, LLC d/b/a Overtime Ice Rink, in amounts and on terms the financing companies otherwise would not have made.

6

28.     The equipment financing that Casey obtained as part of the scheme included the loans listed below.  The funding for each purported equipment purchase was issued on or about the dates set forth:

      a.  $69,950 from Lender 1 for NER Ice Resurfacer 9000 Serial #01014 (10/27/2014);

      b.  $75,259.38 from Lender 2 for NER Ice Resurfacer 9000 Serial #01017 (11/6/2014);

      c.  $49,950 from Lender 3 for Zamboni model 500 Ice Resurfacer Serial #Z116-182 (1/28/2015);

      d.  $46,950 from Lender 4 for Zamboni model 500 Ice Resurfacer Serial #Z119 (3/4/2015);

      e.  $32,950 from Lender 4[1] for Portable Thermal Plus Ice Rink Defogger Model IRD-075-7 and Air Flow Diffuser (4/20/2015);

      f.  $79,500 from Lender 5 for Zamboni Model 500 (4/29/2015);

      g.  $79,950 from Lender 6 for Zamboni Model 500 Serial Number 1061 (5/28/2015);

      h.  $79,950 from Lender 7 for Zamboni Model 500 (7/2/2015);

      i.  $44,950 from Lender 8 for Portable Ice Dehumidification System Serial # 01017 (7/25/2015);

      j.  $24,950 from Lender 9 for Thomsen Ice Edger Serial #3363, Serial #01017 (7/30/2015);

      k.  $29,950 from Lender 10 for Thomsen Ice Edger Serial #1068 (8/20/2015);

      l.  $23,450 from Lender 11 for Portable Dehumidification System Serial #2091 (9/21/2015);

      m.  $31,439.38 from Lender 9 for Thomsen Ice Edger Serial # 01084 (9/17/2016);

      n.  $34,950 from Lender 11 for Thomsen Ice Edger Serial # 01019 (9/30/2016);

      o.  $39,450 from Lender 10 for Totalaire Portable Dehumidification System Serial #2289 (10/18/2016).

29.     The business funding that Casey obtained as part of the scheme included the agreements listed below.  The funding for each agreement was issued on or about the dates set forth:

---

[1] CASEY obtained multiple loans from some lenders, including Lenders 4 and 6.

    a. $35,000 cash advance from Lender 12, pursuant to Future Receivables Sale Agreement (8/3/2016);

    b. $53,149 loan from Lender 13, pursuant to Business Loan Agreement (8/18/2016);

    c. $12,000 cash advance from Lender 14, pursuant to Future Receivables Sale Agreement (8/19/2016);

    d. $45,000 loan from Lender 15, pursuant to Business Loan and Security Agreement (8/31/2016).

30.    Because CASEY did not in fact have the financial ability to pay pursuant to the agreements described above, in many instances he defaulted on the payments. Then, because the collateral securing many of the agreements or the future receivables purchased did not exist, had been sold, had been pledged to multiple financing companies, or was virtually worthless, CASEY's defaults resulted in losses to the financing companies.

### *$34,950 from Lender 11 for Thomsen Ice Edger Serial # 01019*

31.    As one example, in or around September 2016, CASEY caused the submission of a financing application to Lender 11 for the purported purchase of an ice edger from Business 1 for approximately $35,000. Business 1 had in fact brokered the sale of an ice edger to CASEY, but the sale was in or around April 2015, and CASEY paid only $3,500 for the ice edger.

32.    In connection with the financing application, CASEY caused to be submitted to Lender 11 materially false information, as well as fraudulent documents. The false representations and documents concerned the business and revenues of Casey Summit. In addition, CASEY prepared and submitted false tax returns and other tax documents, a false Business 1 invoice, and other false documents in support of the financing application.

33.    On or about September 26, 2016, CASEY falsely confirmed for a Lender 11 representative in a recorded telephone call that the ice edger had been delivered and installed at the Peabody Rink on September 23, 2016.

8

34.     Based upon the false and fraudulent information and documents that CASEY submitted in support of the financing application for the purported purchase of the ice edger, Lender 11 entered into an equipment finance agreement with Casey Summit.  On or around September 30, 2016, Lender 11 paid $34,950 to Business 1, purportedly for the purchase of the ice edger.  Unbeknownst to Lender 11, Individual 4 then transferred $34,000 of the financing proceeds to CASEY.  Most of the funds advanced by Lender 11 were never repaid.

### $45,000 Business Loan from Lender 15

35.     As another example, on or about August 28, 2016, CASEY caused the submission of a financing application to Lender 15 for a small business loan to Casey Summit.  CASEY falsely represented to Lender 15 that Casey Summit was in the ice rink business, even though Casey Summit sold the Peabody Rink to Business 2 on or about June 1, 2016.

36.     In connection with the financing application, CASEY caused to be submitted to Lender 15 materially false information, as well as fraudulent documents.  The false representations and documents concerned the business and revenues of Casey Summit, LLC d/b/a Overtime Ice Rink.  In addition, CASEY prepared and submitted false tax returns and other tax documents, a false Deed of Sale containing the forged signature of Individual 5, and other false documents in support of the financing application.

37.     Based upon the false and fraudulent information and documents submitted in support of the financing application, Lender 15 entered into a business loan and security agreement with Casey Summit LLC d/b/a Overtime Ice Rink.  On or about September 1, 2016, Lender 15 transferred $44,100 into a Santander account held in the name of Casey Summit.  Most of the funds advanced by Lender 15 were never repaid.

## II.        The False Tax Returns

38.      The tax laws of the United States require every citizen and resident of the United States who receives income in excess of the minimum filing amount established by law for a particular tax year to make and file an income tax return for that tax year using IRS Form 1040, IRS Form 1040A or IRS Form 1040EZ.  Each of those forms requires the tax filer to report their gross income for the tax year.

39.      Under the tax laws, gross income means all income from whatever source derived, including but not limited to compensation for services, fees and gross income derived from a business.

40.      Under the tax laws, when money is acquired via a loan and there is no good faith intent on the part of the recipient to repay the funds advanced, such funds are income and are taxable as such.

41.      The funds CASEY fraudulently obtained from the financing companies were income to CASEY in the years in which he took the money.

42.      In 2015, BGP made payments to or for the benefit of CASEY totaling approximately $308,292.

43.      In 2016, BGP made payments to or for the benefit of CASEY totaling approximately $601,073.

44.      The funds CASEY received from BGP and the funds paid on CASEY's behalf by BGP were income to CASEY in the years in which he received the money.

45.      CASEY caused joint federal Form 1040 tax returns to be prepared for tax years 2014, 2015 and 2016 on behalf of himself and G.C.

10

46.     CASEY and G.C. signed their 2014, 2015 and 2016 federal tax return Forms 1040 declaring under penalty of perjury that the information submitted in each of the returns was true, correct and complete.

47.     CASEY caused his federal tax returns for 2014, 2015 and 2016 to be filed with the IRS.

48.     For tax years 2014, 2015 and 2016, CASEY deliberately failed to report to the IRS the income he fraudulently obtained from financing companies.

49.     For tax years 2015 and 2016, CASEY deliberately failed to report to the IRS the income he received from BGP.

### III.     The CARES Act Funds Scheme to Defraud

50.     The Coronavirus Aid, Relief, and Economic Security (CARES) Act was a federal law enacted in March 2020 to provide emergency financial assistance to Americans suffering the economic effects of the COVID-19 pandemic.

*The Economic Injury Disaster Loan Program*

51.     Among other things, the CARES Act expanded the SBA's Economic Injury Disaster Loan (EIDL) program to provide loans of up to $2 million to small businesses that suffered "substantial economic injury" from COVID-19.  The EIDL program required recipients to use EIDL funds only on certain business expenses, including payments of fixed business debts and payroll.

52.     Applicants for EIDLs used the SBA online portal to submit their application materials.  The SBA servers that processed the EIDL applications were based in the state of Iowa.

53.     To qualify for an EIDL, a business had to, among other requirements, be in operation prior to February 1, 2020.  The EIDL application process required applicants to provide information concerning the affected business, including the number of employees, gross revenues, and costs of goods sold in the 12 months prior to January 31, 2020, as well as information about the business owner.  Applicants electronically certified that the information provided was accurate.

54.     The SBA relied on the information provided by the applicant to determine how much money the small business was eligible to receive in the form of EIDL funds.

### *The Paycheck Protection Program*

55.     The CARES Act also provided funding for forgivable loans to small businesses for job retention and certain other expenses through the Paycheck Protection Program (PPP).

56.     In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business.  The PPP loan application required the business, through its authorized representative, to acknowledge the program rules and make certain affirmative certifications.  In the PPP loan application (SBA Form 2483), the small business, through its authorized representative, was required to state, among other things, (i) the number of individuals it employed and (ii) its average monthly payroll expenses.  These figures were used to calculate the amount of a PPP loan the small business was eligible to receive.  In addition, businesses applying for a PPP loan were required to provide documentation of their payroll expenses.

57.     A PPP loan application was processed by a participating lender.  If a PPP loan application was approved, the participating lender funded the PPP loan using its own money, but the loan was 100% guaranteed by the SBA.  Data from the application, including information about

the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

58.     PPP loans were required to be used to pay only certain expenses—including payroll costs, mortgage interest, rent, and utilities—and were forgivable if used for these expenses within a designated period of time and if a certain portion of the proceeds were applied toward payroll.

### The Sector-Specific Relief Grant Program

59.     The MGCC administered the Massachusetts COVID-19 business relief program, providing grants to qualified Massachusetts businesses.  The Sector-Specific Relief Grant Program provided funding up to $75,000 for Massachusetts small businesses that had an exceptional need of cash relief.  The CARES Act was the primary funding source for the Sector-Specific Relief Grant Program, with additional funds appropriated through the Commonwealth's Operating Budget for Fiscal Year 2021.

60.     In addition to an application, businesses seeking Sector-Specific Relief Grant Program funds were required to submit (1) a certificate of good standing from the Secretary of the Commonwealth, (2) a complete 2019 Federal business tax return, and (3) complete 2019 Federal personal tax returns for each business owner with 20% or greater ownership.  Applications and the required documents were submitted electronically through a third-party platform located in Missoula, Montana.

### The Scheme to Defraud

61.     Beginning in or around March 2020, and continuing until at least in or around May 2021, CASEY devised and executed a scheme to fraudulently obtain pandemic-related relief funds—including EIDL funds, PPP loans and Sector-Specific Relief Grant Program funds—by

making materially false statements on EIDL and PPP loan applications, and on a Sector-Specific Relief Grant Program application, and by improperly using the fraudulently obtained loan and grant funds for personal expenses.

### A. The Falsified EIDL Applications

62.     Beginning on or about March 30, 2020, shortly after EIDL funds became available under the CARES Act, CASEY submitted at least ten (10) EIDL applications to the SBA on behalf of companies CASEY created and controlled.

63.     In furtherance of the scheme, on or about March 30, 2020, CASEY filed a false and misleading EIDL application for Loap.  The application identified C.J.C. as the owner of Loap, and CASEY, using C.J.C.'s electronic signature, certified that the information provided was true and correct.  The application contained materially false information concerning the gross revenues for Loap between February 2019 and January 2020.  As a result of the application, on or about June 1, 2020, the SBA awarded Loap a $70,500 EIDL.

64.     In furtherance of the scheme, on or about March 30, 2020, CASEY filed a false and misleading EIDL application for PSN.  The application identified K.C. as the owner of PSN, and CASEY, using K.C.'s electronic signature, certified that the information provided was true and correct.  The application contained materially false information concerning the gross revenues for PSN between February 2019 and January 2020.  As a result of the application, on or about June 1, 2020, the SBA awarded PSN a $60,000 EIDL.

65.     In furtherance of the scheme, on or about March 30, 2020, CASEY filed a false and misleading EIDL application for Mind Body.  The application identified G.C. as the owner of Mind Body, and CASEY, using G.C.'s electronic signature, certified that the information provided

was true and correct.  The application contained materially false information concerning the date

on which the business opened, and the gross revenues for Mind Body between February 2019 and

January 2020.  As a result of the application, on or about June 3, 2020, the SBA awarded Mind

Body a $39,000 EIDL.

66.     In furtherance of the scheme, on or about April 5, 2020, CASEY filed a false and

misleading EIDL application for his mother, C.C., doing business as Casey Cleaning.   The

application identified C.C. as the owner of Casey Cleaning, and CASEY, using C.C.'s electronic

signature, certified that the information provided was true and correct.  The application contained

materially false information concerning the existence of Casey Cleaning, the date on which the

business opened, and the gross revenues for Casey Cleaning between February 2019 and January

2020.  As a result of the application, on or about June 12, 2020, the SBA awarded Casey Cleaning

a $27,500 EIDL.

67.     In furtherance of the scheme, on or about June 12, 2020, CASEY filed a false and

misleading EIDL application for ALE #2.  The application identified Individual 2 as the owner of

ALE #2, and CASEY, using Individual 2's electronic signature, certified that the information

provided was true and correct.  The application contained materially false information concerning

the ownership of ALE #2, the date on which the business opened, and the gross revenues for ALE

#2 between February 2019 and January 2020.  As a result of the application, on or about June 17,

2020, the SBA awarded ALE #2 a $150,000 EIDL.

68.     In furtherance of the scheme, on or about June 15, 2020, CASEY filed a false and

misleading EIDL application for Now Potty.  The application identified Individual 3 as the owner

of Now Potty, and CASEY, using Individual 3's electronic signature, certified that the information

provided was true and correct.  The application contained materially false information concerning the existence and ownership of Now Potty, the date on which the business opened, and the gross revenues for Now Potty between February 2019 and January 2020.  As a result of the application, on or about June 18, 2020, the SBA awarded Now Potty a $150,000 EIDL.

69.     In furtherance of the scheme, on or about June 23, 2020, CASEY filed a false and misleading EIDL application for Casey Summit.  The application identified C.J.C. as the owner of Casey Summit, and CASEY, using C.J.C.'s electronic signature, certified that the information provided was true and correct.  The application contained materially false information concerning the gross revenues for Casey Summit between February 2019 and January 2020.  As a result of the application, on or about June 25, 2020, the SBA awarded Casey Summit a $49,700 EIDL.

70.     In furtherance of the scheme, on or about July 11, 2020, CASEY filed a false and misleading EIDL application for KK Equipment.  The application identified CASEY's mother, C.C., as the owner of KK Equipment, and CASEY, using C.C.'s electronic signature, certified that the information provided was true and correct.  The application contained materially false information concerning the existence and ownership of KK Equipment, the date on which the business opened, and the gross revenues for KK Equipment between February 2019 and January 2020.  As a result of the application, on or about July 29, 2020, the SBA awarded KK Equipment a $96,100 EIDL.

71.     In furtherance of the scheme, on or about August 6, 2020, CASEY filed a false and misleading EIDL application for Aesthetic Laser.  The application identified K.C., as the owner of Aesthetic Laser, and CASEY, using K.C.'s electronic signature, certified that the information provided was true and correct.  The application contained materially false information concerning

the existence of Aesthetic Laser and the gross revenues for Aesthetic Laser between February 2019 and January 2020.  On or about September 6, 2020, the SBA declined the Aesthetic Laser EIDL application.

72.     In furtherance of the scheme, on or about September 23, 2020, CASEY filed a false and misleading EIDL application for Laser Leasing.  The application identified C.J.C. as the owner of Laser Leasing, and CASEY, using C.J.C.'s electronic signature, certified that the information provided was true and correct.  The application contained materially false information concerning the business open date of Laser Leasing, and the gross revenues for Laser Leasing between February 2019 and January 2020.  On or about September 23, 2020, the SBA declined the Laser Leasing EIDL application.

73.     Between April 2020 and July 2020, the SBA wired approximately $497,100 in EIDL funds to bank accounts controlled by CASEY or his family members.[2]  CASEY and his family used the vast majority of the EIDL funds for personal expenses, including a 3.0 carat diamond ring, residential rent payments, living expenses for Individual 3, payments on personal credit card accounts, restaurant meals, car payments, groceries, luxury hotel stays, a family law attorney, and student loan payments.

### B.  The Falsified PPP Loan Applications

74.     Beginning on or about April 11, 2020, CASEY submitted at least four (4) PPP loan applications to lenders on behalf of companies CASEY created and controlled.

---

[2] Although the SBA approved an EIDL to Now Potty, it did not fund the loan.

75.     In furtherance of the scheme, on or about April 11, 2020, CASEY filed a false and misleading PPP application for Loap with Bank of America, N.A., a PPP loan application processor and approved SBA lender of PPP loans.  The application identified C.J.C. as the owner of Loap, and CASEY, using C.J.C.'s electronic signature, certified that the information provided in the application and supporting documents was true and correct.  The application contained materially false information concerning the average monthly payroll of Loap.  In support of the application, CASEY submitted (a) false IRS Forms 1099-MISC, Miscellaneous Income, for 2019, (b) a false IRS Form 940, Employer's Annual Federal Unemployment Tax Return, for 2019, and (c) false payroll records for 2020, all purporting to reflect payroll.  As a result of the application, on or about April 28, 2020, Bank of America, N.A. awarded Loap a $25,000 PPP loan.

76.     In furtherance of the scheme, on or about April 26, 2020, CASEY filed a false and misleading PPP application for PSN with Santander Bank, N.A., a PPP loan application processor and approved SBA lender of PPP loans.  The application identified Individual 2 as the owner of PSN and K.C. as the primary contact, and CASEY, using K.C.'s electronic signature, certified that the information provided in the application and supporting documents was true and correct.  The application contained materially false information concerning the ownership and average monthly payroll of PSN.  In support of the application, CASEY submitted (a) false IRS Forms 1099-MISC, Miscellaneous Income, for 2019, (b) a false IRS Form 940, Employer's Annual Federal Unemployment Tax Return, for 2019, and (c) false payroll records for 2020, all purporting to reflect payroll.  As a result of the application, on or about May 3, 2020, Santander Bank, N.A. awarded PSN a $30,000 PPP loan.

77.     In furtherance of the scheme, on or about February 16, 2021, CASEY filed a false and misleading PPP application for PSN with JP Morgan Chase Bank, N.A., a PPP loan application processor and approved SBA lender of PPP loans.  The application identified K.C. as the owner of PSN, and CASEY, using K.C.'s electronic signature, certified that the information provided in the application and supporting documents was true and correct.  The application contained materially false information concerning the average monthly payroll of PSN.  In support of the application, CASEY submitted a false IRS Form 940, Employer's Annual Federal Unemployment Tax Return, for 2019.  As a result of the application, on or about February 16, 2021, JP Morgan Chase Bank, N.A. awarded PSN a $27,887 PPP loan.

78.     In furtherance of the scheme, on or about March 23, 2021, CASEY filed a false and misleading PPP application for Loap with Amur Equipment Finance (Amur), a PPP loan application processor and approved SBA lender of PPP loans.  The application identified C.J.C. as the owner of Loap, and CASEY, using C.J.C.'s electronic signature, certified that the information provided in the application and supporting documents was true and correct.  The application contained materially false information concerning the average monthly payroll of Loap.  In support of the application, CASEY submitted: (a) a false IRS Form 940, Employer's Annual Federal Unemployment Tax Return, for 2019, and (b) a false IRS Form 941, Employer's Quarterly Federal Tax Return, for October, November and December 2020.  As a result of the application, on or about April 9, 2021, Amur awarded Loap a $26,665 PPP loan.

79.     Between May 2020 and April 2021, approximately $109,552 in PPP funds was deposited into bank accounts controlled by CASEY or his family members.  CASEY and his family used the vast majority of the PPP funds for personal expenses, including cash withdrawals,

payments to Individual 3 for living expenses, and payments for private school tuition, credit cards, student loans and insurance.

### C.     The Falsified Sector-Specific Relief Grant Application

80.     In furtherance of the scheme, on or about January 4, 2021, CASEY filed an application with the MGCC for a Sector-Specific Relief Grant for Mind Body, doing business as Nuwave.  The application identified C.J.C. as the owner of Mind Body, and CASEY, using C.J.C.'s electronic signature, certified that the information provided in the application and supporting documents was true and correct.  The application contained materially false information concerning the company's revenue and operating expenses, and falsely stated that that the business was in operation at the time the application was submitted, and that the business was established prior to June 30, 2019.  In support of the application, CASEY submitted: (a) a false IRS Form 1040, U.S. Individual Tax Return for C.J.C. for 2019, and (b) a false IRS Form 1120-S. U.S. Income Tax Return for an S Corporation for Mind Body for 2019.  As a result of the application, on or about May 28, 2021, the MGCC awarded Mind Body a Sector-Specific Relief Grant in the amount of $70,000.

81.     The $70,000 in grant funds were not used for Mind Body business expenses. Instead, the funds were used for personal expenses including rent for a residential apartment used by K.C., cash withdrawals, and a six-month membership to Match.com for CASEY.  Some of the funds were transferred into an investment account at Charles Schwab, held in the name of C.J.C.

<u>COUNTS ONE THROUGH TWENTY-THREE</u>
Wire Fraud
(18 U.S.C. § 1343)

The United States Attorney alleges:

82.     The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 81 of this Information.

83.     On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

JOHN F. CASEY,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the schemes to defraud, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| 1 | 7/28/2016 | Email from laser_jcasey@laserleasing.com to Lender 2 |
| 2 | 8/3/2016 | Wire transfer in the amount of $35,000 from Lender 12 to Casey Summit account at Citizens |
| 3 | 8/15/2016 | Contract with Lender 13 signed by jcasey8608@aol.com using Docusign |
| 4 | 8/17/2016 | Email from Adobe Sign to John Casey and Lender 14 |
| 5 | 9/1/2016 | Wire transfer in the amount of $44,100 from Lender 15 to Casey Summit account at Santander Bank |
| 6 | 9/17/2016 | Deposit of check from Lender 9 in the amount of $15,719.69 into Business 1 account at Methuen Cooperative Bank |
| 7 | 9/23/2016 | Email from jcasey1350@aol.com to Lender 10 |
| 8 | 12/13/2016 | Email from jcasey1350@aol.com to Lender 11 |
| 9 | 3/30/2020 | Electronic submission of EIDL application for Loap to SBA |
| 10 | 3/30/2020 | Electronic submission of EIDL application for PSN to SBA |
| 11 | 3/30/2020 | Electronic submission of EIDL application for Mind Body to SBA |

| 12 | 4/5/2020 | Electronic submission of EIDL application for Casey Cleaning to SBA |
| 13 | 6/12/2020 | Electronic submission of EIDL application for ALE #2 to SBA |
| 14 | 6/15/2020 | Electronic submission of EIDL application for Now Potty to SBA |
| 15 | 6/23/2020 | Electronic submission of EIDL application for Casey Summit to SBA |
| 16 | 7/11/2020 | Electronic submission of EIDL application for KK Equipment to SBA |
| 17 | 8/6/2020 | Electronic submission of EIDL application for Aesthetic Laser to SBA |
| 18 | 9/23/2020 | Electronic submission of EIDL application for Laser Leasing to SBA |
| 19 | 4/11/2020 | Electronic submission of PPP loan application for Loap to Bank of America, N.A. |
| 20 | 4/26/2020 | Electronic submission of PPP loan application for PSN to Santander Bank, N.A. |
| 21 | 2/16/2021 | Electronic submission of PPP loan application for PSN to JPMorgan Chase, N.A. |
| 22 | 3/23/2021 | Electronic submission of PPP loan application for Loap to Amur |
| 23 | 1/4/2021 | Electronic submission of Sector-Specific Grant Program application for Mind Body to MGCC |

All in violation of Title 18, United State Code, Section 1343.

COUNTS TWENTY-FOUR THROUGH TWENTY-SIX
Aggravated Identity Theft
(18 U.S.C. § 1028A(a)(1))

The United States Attorney further alleges:

84.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 81 of this Information.

85.     On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

JOHN F. CASEY,

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), that is, wire fraud in violation of 18 U.S.C. § 1343, as set forth below:

| Count | Approximate Date | Description |
|-------|------------------|-------------|
| 24 | August 2016 | Use of Individual 5's name on Deed of Sale, as charged in Count 5 |
| 25 | 6/12/2020 | Use of Individual 2's name, date of birth and Social Security Number for EIDL application for ALE #2, as charged in Count 13 |
| 26 | 6/15/2020 | Use of Individual 3's name, date of birth and Social Security Number for EIDL application for Now Potty, as charged in Count 14 |

All in violation of Title 18, United States Code, Section 1028A(a)(1).

23

COUNTS TWENTY-SEVEN THROUGH THIRTY
Money Laundering
(18 U.S.C. § 1957)

The United States Attorney further alleges:

86.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 81 of this Information.

87.     On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

JOHN F. CASEY,

knowingly engaged and attempted to engage in monetary transactions in criminally derived property of a value greater than $10,000, where such property was derived from specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343:

| Count | Approximate Date | Transaction |
|-------|------------------|-------------|
| 27 | 9/19/2016 | Deposit of Business 1 Check No. 3338, in the amount of $29,000, drawn on Methuen Cooperative Bank account number xxxxx2387, into Santander Bank account number xxxxxx5767, held in the name of Casey Summit |
| 28 | 10/1/2016 | Deposit of Business 1 Check No. 3645, in the amount of $34,000, drawn on Methuen Cooperative Bank account number xxxxx2387, into Santander Bank account number xxxxxx5767, held in the name Casey Summit |
| 29 | 10/21/2016 | Wire transfer in the amount of $38,961 from Methuen Cooperative Bank account number xxxxx2387, into Santander Bank account number xxxxxx5767. |
| 30 | 7/13/2020 | Purchase of JPMorgan Chase Cashier's Check Number 9628200937, in the amount of $50,000. |

All in violation of Title 18, United States Code, Section 1957.

24

## COUNTS THIRTY-ONE THROUGH THIRTY-THREE
Filing a False Tax Return
(26 U.S.C. § 7206(1))

The United States Attorney further alleges:

88.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 81 of this Information.

89.     On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

JOHN F. CASEY,

did willfully make and subscribe a U.S. Individual Tax return which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the Director, Internal Revenue Service, and which return the defendant did not believe to be true and correct as to every material matter in that the gross income CASEY received for the tax years set forth below substantially exceeded the amount CASEY reported to the IRS, as follows:

| Count | Filed On or About | Tax Year | False Items |
|-------|-------------------|----------|-------------|
| 31 | 10/29/2015 | 2014 | Line 22, Total Income: $60,661 |
| 32 | 6/24/2016 | 2015 | Line 22, Total Income: $69,068 |
| 33 | 9/25/2018 | 2016 | Line 22, Total Income: -$9,000 |

All in violation of Title 26, United States Code, Section 7206(1).

## FRAUD FORFEITURE ALLEGATION
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The United States Attorney further alleges:

1.      Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1343, set forth in Counts One through Twenty-Three, the defendant,

### JOHN F. CASEY,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.  The property to be forfeited includes, but is not limited to, the following assets:

    a.  one women's white gold ring containing one 3.0 carat, oval diamond with GIA certificate number 7341730431 and side stones;

    b.  $12,427.52 in United States currency seized from Bank of America account number xxxx xxxx 8966, held in the name of Loap Leasing LLC on or about August 20, 2021;

    c.  $59,461.91 in United States currency seized from Bank of America account number xxxx xxxx 8716, held in the name of Mind Body Wellness USA LLC, on or about August 20, 2021; and

    d.  All funds on deposit in Charles Schwab account number xxxx-8978, held in the name of C.C., which was seized in place on or about August 20, 2021.

2.      If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

     e.  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

## MONEY LAUNDERING FORFEITURE ALLEGATION
### (18 U.S.C. § 982(a)(1))

The United States Attorney further alleges:

1.        Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1957, set forth in Counts Twenty-Seven through Thirty of this Information, the defendant,

JOHN F. CASEY,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offenses, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following assets:

      a.   one women's white gold ring containing one 3.0 carat, oval diamond with GIA certificate number 7341730431 and side stones.

2.        If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant --

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the Court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

NATHANIEL R. MENDELL
Acting United States Attorney


By:   */s/Kristina E. Barclay*
KRISTINA E. BARCLAY
Assistant U.S. Attorney


Dated: October 20, 2021